UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSIE DORSEY, CDCR #AF-6022,<br><br>Plaintiff,<br><br>vs.<br><br>D. PARAMO, P. COVELLO, J. JUAREZ, J. STEWARD, E. BENYARD, S. ROBERTS, DR. CHAM, DARRYL BATES, M. GARIKAPARTHI, P. SHAKIBA, G. CASIAN, V. SILVA, J. BATES, DR. LEE, JOHN DOES 1-10,<br><br>Defendants. | Case No.: 3:20-cv-00843-JAH-LL<br><br>**ORDER**<br><br>**1) GRANTING MOTION TO PROCEED IN FORMA PAUPERIS (ECF No. 6);**<br><br>**AND**<br><br>**2) DISMISSING COMPLAINT FOR FAILURE TO STATE A CLAIM PURSUANT TO 28 U.S.C. § 1915(e)(2)(B) AND 28 U.S.C. § 1915A(b)** |

Plaintiff Jessie Dorsey, currently incarcerated at the Richard J. Donovan Correctional Facility ("RJD"), is proceeding pro se in this civil rights action pursuant to 42 U.S.C. Section 1983.  (*See* ECF No. 1, Compl.)   Plaintiff alleges that numerous correctional and medical officials at RJD violated his Eighth Amendment rights during the course of approximately seven years of treatment he received for knee and ankle pain.  (*See*

*generally id.*)

Plaintiff did not prepay the $400 civil filing fee required by 28 U.S.C. Section 1914(a) at the time of filing and has instead filed a Motion to Proceed In Forma Pauperis ("IFP") pursuant to 28 U.S.C. Section 1915(a). (*See* ECF No. 6.)

## I.     Motion to Proceed In Forma Pauperis

All parties instituting any civil action, suit or proceeding in a district court of the United States, except an application for writ of habeas corpus, must pay a filing fee of $400.[1] *See* 28 U.S.C. § 1914(a). The action may proceed despite a plaintiff's failure to prepay the entire fee only if he is granted leave to proceed IFP pursuant to 28 U.S.C. Section 1915(a). *See Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007); *Rodriguez v. Cook*, 169 F.3d 1176, 1177 (9th Cir. 1999). However, a prisoner who is granted leave to proceed IFP remains obligated to pay the entire fee in "increments" or "installments," *Bruce v. Samuels*, 136 S. Ct. 627, 629 (2016); *Williams v. Paramo*, 775 F.3d 1182, 1185 (9th Cir. 2015), and regardless of whether his action is ultimately dismissed. *See* 28 U.S.C. § 1915(b)(1), (2); *Taylor v. Delatoore*, 281 F.3d 844, 847 (9th Cir. 2002).

Section 1915(a)(2) requires prisoners seeking leave to proceed IFP to submit a "certified copy of the trust fund account statement (or institutional equivalent) for . . . the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(a)(2); *Andrews v. King*, 398 F.3d 1113, 1119 (9th Cir. 2005). From the certified trust account statement, the Court assesses an initial payment of 20% of (a) the average monthly deposits in the account for the past six months, or (b) the average monthly balance in the account for the past six months, whichever is greater, unless the prisoner has no

---

[1]  In addition to the $350 statutory fee, civil litigants must pay an additional administrative fee of $50. *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. Oct. 1, 2019)). The additional $50 administrative fee does not apply to persons granted leave to proceed IFP. *Id.*

assets. *See* 28 U.S.C. § 1915(b)(1); 28 U.S.C. § 1915(b)(4). The institution having custody of the prisoner then collects subsequent payments, assessed at 20% of the preceding month's income, in any month in which his account exceeds $10, and forwards those payments to the Court until the entire filing fee is paid. *See* 28 U.S.C. § 1915(b)(2); *Bruce*, 136 S. Ct. at 629.

In support of his IFP Motion, Plaintiff has submitted a certified copy of his trust account statement pursuant to 28 U.S.C. Section 1915(a)(2) and S.D. Cal. Civ. L.R. 3.2. *Andrews*, 398 F.3d at 1119. These trust account statements do not cover the relevant time period, which is the six months preceding the filing of the Complaint. (*See* ECF No. 6, at 5 (trust account statements for a period of six months were filed approximately three months after the Complaint).) Shortly thereafter, Plaintiff submitted certified trust account statements for the correct time period. (*See* ECF No. 3.) The Court has reviewed those statements, as well as the attached prison certificate verifying the balances, in conjunction with Plaintiff's post-complaint IFP Motion. The trust account statements show that during the six months preceding the filing of this action, Plaintiff carried an average monthly balance of $215.08, had average monthly deposits of $254.79, and an available balance at the time of filing of $278.51. (*See id.* at 1-4.)

Therefore, the Court **GRANTS** Plaintiff's Motion to Proceed IFP (ECF No. 5) and assesses an initial partial filing fee of $50.96 pursuant to 28 U.S.C. Section 1915(b)(1)(A). The Court directs the Secretary of the CDCR, or her designee, to collect this initial filing fee only if sufficient funds are available in Plaintiff's account at the time this Order is executed. *See* 28 U.S.C. § 1915(b)(4) (providing that "[i]n no event shall a prisoner be prohibited from bringing a civil action or appealing a civil action or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee."); *Bruce*, 136 S. Ct. at 630; *Taylor*, 281 F.3d at 850 (finding that 28 U.S.C. Section 1915(b)(4) acts as a "safety-valve" preventing dismissal of a prisoner's IFP case based solely on a "failure to pay . . . due to the lack of funds available to him when payment is ordered."). The Court further directs the Secretary of the CDCR, or her designee, to

collect the remaining balance of the filing fees required by 28 U.S.C. Section 1914 and to forward it to the Clerk of the Court pursuant to the installment payment provisions set forth in 28 U.S.C. Section 1915(b)(1).

**II.    Sua Sponte Screening pursuant to 28 U.S.C. Section 1915(e)(2) and Section 1915A(b)**

A. Standard of Review

Because Plaintiff is a prisoner and is proceeding IFP, his Complaint requires a pre-answer screening pursuant to 28 U.S.C. Section 1915(e)(2) and Section 1915A(b). Under these statutes, the Court must sua sponte dismiss a prisoner's IFP complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *See Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C. Section 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. Section 1915A(b)). "The purpose of [screening] is 'to ensure that the targets of frivolous or malicious suits need not bear the expense of responding.'" *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (quoting *Wheeler v. Wexford Health Sources, Inc.,* 689 F.3d 680, 681 (7th Cir. 2012)).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under Section 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that screening pursuant to Section 1915A "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)"). Rule 12(b)(6) requires a complaint "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *Wilhelm*, 680 F.3d at 1121.

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."

*Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard. *Id.*; *see also Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

B. <u>Plaintiff's Factual Allegations</u>

Plaintiff's Complaint alleges that various correctional and medical officials are liable for deficiencies in the medical care Plaintiff received for knee and ankle issues he experienced between 2012 and 2019. (*See generally* Compl.) The issues began in early 2012, shortly after Plaintiff's arrival at RJD, when he requested care for pain and discomfort in his right knee and ankle. (*See id.* at 5.) Over the course of the next several months Plaintiff was examined by various doctors, nurses, and other medical personnel who eventually concluded that "conservative measures" for addressing Plaintiff's conditions had failed. (*See id.* at 6-7 (emphasis omitted).) These "conservative measures," according to Plaintiff, "only treated the Plaintiff's immediate complaint and did not remedy the root cause of the Plaintiff's medical issue." (*Id.* at 7.)

In January 2013, Plaintiff had surgery, specifically an arthroscopic meniscectomy, performed by Defendant Dr. Roman Cham. (*See id.*) Plaintiff received post-surgical care, which he appears to allege was adequate with the exception of the timeliness of certain accommodations "to assist him with walking, standing, sitting and moving" within the prison. (*See id.* (describing the treatment as "rel[ieving] Plaintiff's immediate pain and discomfort").) After the surgery, however, an unnamed doctor concluded that Plaintiff continued to experience knee pain and issues with walking, noting that "due to a 'lack of time,' [the doctor] could not adequately and effectively treat the Plaintiff." (*See id.* at 7-8.) Through the remainder of 2013, Plaintiff continued to experience pain and other issues with his knee, which were treated with a variety of injections, physical therapy, and other medical treatments, and addressed by various accommodations at RJD. (*See id.* at 8-9.)

Plaintiff's issues with his right knee continued in 2014, but "due to and directly

related with the lack of the appropriate treatment" Plaintiff also began to experience pain and other problems with his left knee. (*See id.* at 9.) Between 2014 and 2019 "Plaintiff . . . continued to complain of [right and left] knee pain, swelling, locking when standing and when walking," and the treatment Plaintiff sought and received "only produced temporary relief and in no way remedied the Plaintiff's medical problems." (*See id.* at 9-10.) By fall 2015, Plaintiff had "been examined, consulted, treated, advised, and d[iagnosed] by many doctors. Each doctor ha[d] recommended various treatment plans and medication which seemingly cause[d] the Plaintiff little or no relief from his chronic pain . . . ." (*Id.* at 10.) As a result, in late 2015 Plaintiff and his doctors allegedly agreed that another knee surgery was the best option for relieving "Plaintiff of his multi-year chronic pain." (*See id.* at 11.) Although forms were submitted and the procedure was scheduled "on or about 1-5-16," Plaintiff evidently did not receive surgery until mid-2019, and in the intervening years, he continued to experience pain and developed additional complications. (*See id.* at 11, 14-15.) Plaintiff attributes this delay to "the lack of adequate health care and the procrastination of the RJD medical staff . . . ." (*See id.* at 11.) During the intervening period, however, Plaintiff continued to receive accommodations to help him walk, and consulted with doctors, including Defendant Cham, regarding possible treatments, including surgery. (*See id.* at 12-15.)

In May 2019, the long-contemplated knee surgery took place, this time performed by Defendant Dr. James Bates. (*See id.* at 15.) Plaintiff received physical therapy following the surgery, and allegedly "progress[ed] very well," until July 2019, when Plaintiff experienced a recurrence of pain and locking and buckling in his right knee. (*See id.*) Plaintiff alleges that he is "once again suffering from chronic pain," and that the procedures he received "have again failed," leaving Plaintiff "no recourse [other] than [to] seek redress" in court. (*See id.*) Plaintiff seeks compensatory and punitive damages "in an amount that has yet to be ascertained" for alleged violations of his right to medical care. (*See id.* at 16.)

    C. <u>Analysis</u>

To state a claim under 42 U.S.C. Section 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Naffe v. Frye*, 789 F.3d 1030, 1035-36 (9th Cir. 2015).

The Eighth Amendment requires that inmates have "ready access to adequate medical care," *Hoptowit v. Ray*, 682 F.2d 1237, 1253 (9th Cir. 1982), and "deliberate indifference to serious medical needs of prisoners" violates the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "Deliberate indifference 'may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown in the way in which prison physicians provide medical care.'" *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (quoting *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988)). "A prison official acts with 'deliberate indifference . . . only if the [prison official] knows of and disregards an excessive risk to inmate health and safety.'" *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting *Gibson v. Cnty. of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002), *overruled on other grounds by Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1076 (9th Cir. 2016)). "Under this standard, the prison official must not only 'be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). "Inadvertent failures to provide adequate medical care, mere negligence or medical malpractice, delays in providing care (without more), and differences of opinion over what medical treatment or course of care is proper, are all insufficient to constitute an Eighth Amendment violation." *Norvell v. Roberts*, No. 20-cv-0512 JLS (NLS), 2020 WL 4464454, at *4 (S.D. Cal. Aug. 4, 2020) (citing *Estelle*, 429 U.S. at 105-07; *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989); *Shapley v. Nev. Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985)).

As an initial matter, Plaintiff's claims against Defendants Paramo, Covello, Juarez, Steward, Benyard, Roberts, Shakiba, Casian, Silva, Lee, and John Does 1-10 must be

dismissed for a simple reason. Aside from identifying these individuals as Defendants in the caption of the Complaint and describing their duties in general and conclusory terms on pages 2-4 of the Complaint, Plaintiff includes no factual allegations regarding these Defendants' alleged participation in any violation of Plaintiff's constitutional rights. This is insufficient. Plaintiff must allege "factual content that would allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" in order to state a claim. *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556); *see also id.* (The mere possibility of misconduct is insufficient to state a claim (citing *Twombly*, 550 U.S. at 555)); *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002) (plaintiff must allege "personal participation in the alleged rights deprivation" in order to state a Section 1983 claim). Additionally, with respect to supervisory individuals such as Defendants Paramo and Covello, Plaintiff may not rely on their roles as warden alone to state a claim. Instead, Plaintiff must allege their "'personal involvement in the constitutional deprivation'" or "'a sufficient causal connection between the supervisor[s'] wrongful conduct and the constitutional violation.'" *See Jones*, 297 F.3d at 934 (quoting *Redman v. Cnty. of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991) (en banc), *abrogated on other grounds by Farmer*, 511 U.S. at 837); *see also Iqbal*, 556 U.S. at 676 ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." (emphasis in original)). As to Defendants John Does 1-10, although "'[a] plaintiff may refer to unknown defendants as Defendant John Doe 1, John Doe 2, John Doe 3, and so on, . . . he must allege specific facts showing how each particular [D]oe [D]efendant violated his rights.'" *See Amezquita v. Hough*, No. 3:19-cv-01461-AJB-KSC, 2019 WL 4674287, at *3 n.2 (S.D. Cal. Sept. 25, 2019) (quoting *Cuda v. Employees/Contractors/Agents at or OCCC*, Civ. No. 19-00084 DKW-KJM, 2019 WL 2062945, at *3-4 (D. Haw. May 9, 2019)). Because Plaintiff has not satisfied these requirements, his claims against Defendants Paramo, Covello, Juarez, Steward, Benyard, Roberts, Shakiba, Casian, Silva, Lee, and John Does 1-10 are dismissed sua sponte for failure to state a claim upon which relief may be granted. *See* 28 U.S.C.

§ 1915(e)(2)(B)(ii); 28 U.S.C. § 1915A(b)(1).

Although the Complaint includes some factual allegations regarding the conduct of the remaining Defendants, Cham, Bates, and Garikaparthi, Plaintiff's claims against these Defendants must also be dismissed. As outlined above, to state a claim for violations of his Eighth Amendment right to medical care, Plaintiff must allege that Defendants acted with "deliberate indifference" to his serious medical needs. *See Estelle*, 429 U.S. at 104. "[I]solated occurrences of neglect" do not constitute deliberate indifference, *Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990), and to allege an Eighth Amendment claim, Plaintiff "must show that the course of treatment the [official] chose was medically unacceptable under the circumstances and that the [official] chose this course in conscious disregard of an excessive risk to the [P]laintiff's health." *Hamby v. Hammond*, 821 F.3d 1085, 1092 (9th Cir. 2016) (quoting *Snow v. McDaniel*, 681 F.3d 978, 988 (9th Cir. 2012), *overruled in part on other grounds by Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014 (en banc)). This requirement that a Defendant "conscious[ly] disregard" an excessive risk to Plaintiff's health is related to the requirement outlined previously that a Defendant "not only 'be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference'" in order to be deliberately indifferent. *See Toguchi*, 391 F.3d at 1057 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). Plaintiff's allegations against Defendants Cham, Bates, and Garikaparthi fall far short of this mark. *See Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012) (deliberate indifference requires, among other things, showing "a purposeful act or failure to respond to a prisoner's pain or possible medical need and . . . harm caused by the indifference . . . ." (quoting *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006)); *Toguchi*, 391 F.3d at 1058 ("[A] mere 'difference of medical opinion . . . [is] insufficient, as a matter of law, to establish deliberate indifference.'" (quoting *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)). At best, Plaintiff alleges that the treatment performed by these Defendants failed to remedy his underlying conditions. *See Nichoslon v. Finander*, No. CV 12-9993-FMO (JEM), 2014 WL 8095187, at *9 (C.D. Cal. Oct. 24, 2014) ("[A]

prison official does not exhibit deliberate indifference to a serious medical need simply because she prescribes a course of treatment that proves ineffective."), *report and recommendation adopted* 2015 WL 1006551 (C.D. Cal. Mar. 5, 2015).

Moreover, when Plaintiff does allege facts that might support a claim of deliberate indifference, such as his assertion that needed surgical procedures were delayed for years due to the "procrastination of the RJD medical staff," those actions are not attributed to Defendants Cham, Bates, Garikaparthi, or any other named Defendant. (*See* Compl. at 11.) Accordingly, Plaintiff's claims against Defendants Cham, Bates, and Garikaparthi are dismissed sua sponte for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii); 28 U.S.C. § 1915A(b)(1).

### III.   Conclusion and Orders

Good cause appearing, the Court:

1. **GRANTS** Plaintiff's Motion to Proceed IFP pursuant to 28 U.S.C. Section 1915(a) (ECF No. 6).

2. **DIRECTS** the Secretary of the CDCR, or her designee, to collect from Plaintiff's prison trust account the initial filing fee assessed in this Order, and shall forward the remainder of the $350 filing fee owed by collecting monthly payments from Plaintiff's account in an amount equal to twenty percent (20%) of the preceding month's income and forwarding those payments to the Clerk of the Court each time the amount in the account exceeds $10 pursuant to 28 U.S.C. Section 1915(b)(2). ALL PAYMENTS SHALL BE CLEARLY IDENTIFIED BY THE NAME AND NUMBER ASSIGNED TO THIS ACTION.

3. **DIRECTS** the Clerk of the Court to serve a copy of this Order on Kathleen Allison, Secretary, California Department of Corrections and Rehabilitation, P.O. Box 942883, Sacramento, California 94283-0001.

///

///

4.     **DISMISSES** Plaintiff's Complaint for failing to state a claim upon which relief may be granted pursuant to 28 U.S.C. Section 1915(e)(2)(B)(ii) and Section 1915A(b)(1).

5.     **GRANTS** Plaintiff **forty-five (45)** days leave from the date of this Order in which to file an Amended Complaint which cures all the deficiencies of pleading noted above. Plaintiff's Amended Complaint must be complete by itself without reference to his original pleading. Defendants not named and any claim not re-alleged in his Amended Complaint will be considered waived. *See* S.D. Cal. Civ. L.R. 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled.").

If Plaintiff fails to file an Amended Complaint within the time provided, the Court will enter a final Order dismissing this civil action based both on Plaintiff's failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. Sections 1915(e)(2)(B)(ii) and 1915A(b)(1), and his failure to prosecute in compliance with a court order requiring amendment. *See Lira v. Herrera*, 427 F.3d 1164, 1169 (9th Cir. 2005) ("If a plaintiff does not take advantage of the opportunity to fix his complaint, a district court may convert the dismissal of the complaint into dismissal of the entire action.").

**IT IS SO ORDERED.**

Dated: October 15, 2020

_____
Hon. John A. Houston
United States District Judge