UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSIE DORSEY, CDCR #AF-6022, Plaintiff, vs. S. ROBERTS; R.B. CHAM; D. BATES; M. GARIKAPARTHI; P. SHAKIBA; G. CASIAN; V. SILVA; J. BATES, Defendants. | Case No.: 3:20-cv-00843-JAH-LL **ORDER:** **(1) DISMISSING CLAIMS AND DEFENDANTS PURSUANT TO 28 U.S.C. SECTION 1915(e)(2) AND 28 U.S.C. SECTION 1915A(b);** **AND** **(2) DIRECTING U.S. MARSHAL TO EFFECT SERVICE UPON DEFENDANT SHAKIBA PURSUANT TO 28 U.S.C. SECTION 1915(d) AND FED. R. CIV. P. 4(c)(3)** |

Plaintiff Jessie Dorsey, currently incarcerated at the Richard J. Donovan Correctional Facility ("RJD"), is proceeding pro se and *in forma pauperis* ("IFP") in this civil rights action pursuant to 42 U.S.C. Section 1983. (*See* ECF No. 7, at 10.)

The Court previously dismissed Plaintiff's initial Complaint, ECF No. 1, for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. Section

1915(e)(2)(B) and 28 U.S.C. Section 1915A(b) and granted leave to amend. (*See* ECF No. 7, at 11.) Plaintiff timely filed a First Amended Complaint. (*See* ECF No. 10, FAC.)

**I.      Screening pursuant to 28 U.S.C. Section 1915(e)(2) and Section 1915A(b)**

   A. <u>Standard of Review</u>

Because Plaintiff is a prisoner and is proceeding IFP, his First Amended Complaint requires a pre-answer screening pursuant to 28 U.S.C. Section 1915(e)(2) and Section 1915A(b). Under these statutes, the Court must sua sponte dismiss a prisoner's IFP complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *See Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C. Section 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. Section 1915A(b)). "The purpose of [screening] is 'to ensure that the targets of frivolous or malicious suits need not bear the expense of responding.'" *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (quoting *Wheeler v. Wexford Health Sources, Inc.,* 689 F.3d 680, 681 (7th Cir. 2012)).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under Section 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that screening pursuant to Section 1915A "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)"). Rule 12(b)(6) requires a complaint "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *Wilhelm*, 680 F.3d at 1121.

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief

[is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard. *Id.*; *see also Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).

B. <u>Plaintiff's Factual Allegations</u>

Plaintiff's claims focus on the allegedly deficient course of medical treatment he received for knee and ankle problems between 2012 and 2019. (*See* FAC at 2.) Although the sequence of events is somewhat unclear, for most of that period, Plaintiff's care focused on "conservative measures," including steroid injections, which gave Plaintiff only temporary relief from his chronic pain and reduced mobility. (*See id.* at 3.) According to Plaintiff, "[t]hese 'conservative measures' were seemingly based on witchcraft medincintry [sic] and fin[ancial] conservation." (*See id.*)

In early 2013, Plaintiff was admitted to "Alvarado Hospital Medical Center LLC" for a surgical procedure, an arthroscopic meniscectomy, which was performed by Defendant Dr. Roman Cham. (*See id.* at 2-3.) After the surgery, Plaintiff received care from Defendant Dr. Darryl Bates, who allegedly used conservative and "superficial" measures that "did nothing to [alleviate] . . . [P]laintiff's pain and suffering," and that after the procedure he did not receive accommodations. (*See id.* at 3.) Plaintiff also alleges that Defendant D. Bates "could not perform his duty," noting a "'lack of time.'" (*See id.*)

By the end of 2014, after two years of symptoms, Plaintiff received accommodations, presumably for his reduced mobility. (*See id.* at 3-4.) Plaintiff does not describe those accommodations, but states that "[t]he level of treatment provided by RJD Defendants does not meet the bar of 'equal and fair' by any standards," and contends that he was subjected to cruel and unusual punishment on account of "'conservatism and lack of time' among other constitutional violations." (*Id.* at 4 (internal quotation marks in original).)

Much of the First Amended Complaint focuses on the conduct of Plaintiff's four primary care physicians, Defendants Dr. M. Garikaparthi, Dr. P. Shakiba, Dr. G. Casian,

and Dr. J. Silva. Defendant Garikaparthi allegedly diagnosed Plaintiff with knee and ankle problems and ordered certain accommodations, but allegedly "did absolutely nothing to relief [Plaintiff's] chronic pain . . . ." (*See id.*) Although Plaintiff pursued a variety of treatments suggested by Defendant Garikaparthi, his condition continued to worsen. (*See id.* at 4-5.) After Defendant Shakiba became Plaintiff's primary care physician, he reviewed the results of an MRI "approved . . . by [Defendant] S. Roberts M.D.." which showed certain knee conditions, and recommended another knee surgery. (*See id.* at 5.) Despite that recommendation, Defendant Shakiba allegedly "cancelled follow-up appointments, and refused to see [Plaintiff] to discuss new develop[]ments with his right knee," and "ignored the complaints and pain reduction request [sic] submitted by [Plaintiff] as per RJD policy." (*See id.*) Plaintiff's care was allegedly delayed as a result, and he developed additional complications, including pain in his other knee. (*See id.*)

Subsequently, Defendant Casian became Plaintiff's primary care physician. (*See id.* at 7.) Plaintiff alleges that Casian failed "to adequately treat the Plaintiff and to provide medication that would relieve . . . his . . . chronic pain," and "ignored the facts and continued to delay tests based on cost," causing Plaintiff's condition to worsen and increasing his pain. (*See id.*) Plaintiff makes similar allegations against Defendant Silva, who also served as Plaintiff's primary care physician. (*See id.* at 8.) According to Plaintiff, Silva found that Plaintiff's conditions were serious, but "did little or next to nothing to address and to treat the underlying problem," and that his involvement in Plaintiff's care "did not improve the Plaintiff's condition, but in fact added to the ongoing constitutional violations . . . ." (*Id.*)

In mid-2018, Plaintiff's surgeon, Defendant Cham, was again recommending surgery, noting after a conference that Plaintiff "'will not probably benefit from any surg[e]ry that is less than a total knee replacement.'" (*Id.* at 9 (quoting medical records).) After receiving a second opinion, Plaintiff agreed to undergo surgery, including a right knee replacement. (*See id.* at 9.) The procedure was performed by Defendant Dr. J. Bates on May 8, 2019. (*Id.*) Although the knee replacement seems to have temporarily helped

4

3:20-cv-00843-JAH-LL

Plaintiff, by July 4, 2019 he was again experiencing "right knee locking, buckling, and pain." (*See id.*) Those symptoms have continued since then despite Plaintiff completing physical therapy and recommended workouts. (*See id.*)

Plaintiff alleges that Defendants are liable in their official capacities for violating his Eighth Amendment right to adequate medical care and seeks compensatory and punitive damages in an unspecified amount. (*See id.* at 10.)

C. <u>Analysis</u>

As an initial matter, Plaintiff's claims against Defendants in their official capacities must be dismissed. The Eleventh Amendment bars official capacity damages claims brought under Section 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70-71 (1989); *Kentucky v. Graham*, 473 U.S. 159, 166-67 (1985). As a result, Plaintiff's official capacity claims must be dismissed sua sponte for failure to state a claim. *See Will*, 491 U.S. at 71; *Graham*, 473 U.S. at 169; *see also* 28 U.S.C. § 1915(e)(2)(B)(ii); 28 U.S.C. § 1915A(b)(1). The Court nevertheless liberally construes Plaintiff's First Amended Complaint as alleging identical claims against Defendants in their individual capacities, and as a result will analyze the substance of Plaintiff's claims. *See Watison*, 668 F.3d at 1112 (explaining that pro se complaints must be liberally construed).

The Eighth Amendment requires that inmates have "ready access to adequate medical care," *Hoptowit v. Ray*, 682 F.2d 1237, 1253 (9th Cir. 1982), and "deliberate indifference to serious medical needs of prisoners" violates the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "Deliberate indifference 'may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown in the way in which prison physicians provide medical care.'" *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (quoting *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988)). "A prison official acts with 'deliberate indifference . . . only if the [prison official] knows of and disregards an excessive risk to inmate health and safety.'" *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting *Gibson v. Cnty. of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002), *overruled on other grounds by Castro v. Cnty. of Los*

*Angeles*, 833 F.3d 1060, 1076 (9th Cir. 2016)). "Under this standard, the prison official must not only 'be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). "Inadvertent failures to provide adequate medical care, mere negligence or medical malpractice, delays in providing care (without more), and differences of opinion over what medical treatment or course of care is proper, are all insufficient to constitute an Eighth Amendment violation." *Norvell v. Roberts*, No. 20-cv-0512 JLS (NLS), 2020 WL 4464454, at *4 (S.D. Cal. Aug. 4, 2020) (citing *Estelle*, 429 U.S. at 105-07; *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989); *Shapley v. Nev. Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985)).

The Court finds that as to Defendant Shakiba, Plaintiff's First Amended Complaint contains a plausible claim of deliberate indifference to serious medical needs sufficient to surpass the "low threshold" set for sua sponte screening required by 28 U.S.C. Sections 1915(e)(2) and 1915A(b). *See Iqbal*, 556 U.S. at 678; *Wilhelm*, 680 F.3d at 1123; *see also Estelle*, 429 U.S. at 104 ("[D]eliberate indifference to serious medical needs of prisoners" violates the Eighth Amendment); *Colwell*, 763 F.3d at 1066. Plaintiff's allegation that Defendant Shakiba intentionally delayed medical care and that Plaintiff developed complications as a result is sufficient at this stage to state a claim. *See Gray v. Hernandez*, 651 F. Supp. 2d 1167, 1185 (S.D. Cal. 2009) (explaining that delays in treatment "must cause substantial harm" in order to violate the Eighth Amendment (citing *Wood v. Housewright*, 900 F.2d 1332 (9th Cir. 1990))). Nevertheless, the Court cautions Plaintiff that the sua sponte screening process is "cumulative of, not a substitute for, any subsequent [motion to dismiss] that the defendant may choose to bring." *See Teahan v. Wilhelm*, 481 F. Supp. 2d 1115, 1119 (S.D. Cal. 2007).

Plaintiff's claims against Defendants Roberts, Cham, D. Bates, J. Bates, Garikaparthi, Casian, and Silva must be dismissed for failure to state a claim upon which relief may be granted. As the Court explained in its Order dismissing Plaintiff's initial Complaint, "[a]t best Plaintiff alleges that the treatment performed by these Defendants

failed to remedy his underlying conditions." *See* ECF No. 7, at 9. "[A] prison official does not exhibit deliberate indifference to a serious medical need simply because she prescribes a course of treatment that proves ineffective." *Nicholson v. Finander*, No. CV 12-9993-FMO (JEM), 2014 WL 8095187, at *9 (C.D. Cal. Oct. 24, 2014), *report & recommendation adopted* 2015 WL 1006551 (C.D. Cal. Mar. 5, 2015). Although Plaintiff clearly disagrees with the remaining Defendants' decisions to use what he refers to as "conservative measures" to address Plaintiff's knee and ankle conditions, "to prevail on a claim involving choices between alternative courses of treatment, a prisoner must show that the chosen course of treatment 'was medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk to [the prisoner's] health.'" *Toguchi*, 391 F.3d at 1058 (quoting *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)). Plaintiff has not plausibly alleged that the plan of treatment chosen by the remaining Defendants was medically unacceptable or that it was chosen in "conscious disregard" to Plaintiff's health. *See Reynolds v. Wash. Dep't of Corrs.*, 724 F. App'x 604 (9th Cir. 2018) (rejecting prisoner's argument that decision to "'continue with conservative management'" of back conditions was deliberately indifferent). This is true despite Plaintiff's allegations that the remaining Defendants decisions were driven, at least in part, by concerns about cost or lack of time. *See Nava v. Velardi*, No. 15cv1156-AJB(BLM), 2018 WL 3773848, at *13 (S.D. Cal. Aug. 9, 2018) ("To the extent Plaintiff is arguing that a prison doctor cannot consider medical costs or other prison policies . . . , Plaintiff is wrong." (collecting cases)); *see also Peralta v. Dillard*, 744 F.3d 1076, 1084 (9th Cir. 2014) (en banc) ("A prison medical official who fails to provided needed treatment because he lacks the necessary resources can hardly be said to have intended to punish the inmate."); *Moore v. Rotman*, No. 1:10-cv-00738-SKO PC, 2010 WL 4877812, at *3 (E.D. Cal. Nov. 23, 2010) (concluding that inability to see doctor on three occasions due to lack of time constituted "isolated incidents of neglect, and d[id] not constitute deliberate indifference . . . .").

Accordingly, Plaintiff's claims against Defendants Roberts, Cham, D. Bates, J. Bates, Garikaparthi, Casian, and Silva are dismissed in their entirety for failure to state a

claim upon which relief may be granted.  *See* 28 U.S.C. § 1915(e)(2); 28 U.S.C. § 1915A(b).

### D. Leave to Amend

Because Plaintiff has already been provided a short and plain statement of his pleading deficiencies, as well as an opportunity to amend those claims to no avail, the Court finds that granting further leave to amend on the claims dismissed in this Order would be futile.  *See Gonzalez v. Planned Parenthood*, 759 F.3d 1112, 1116 (9th Cir. 2014) ("'Futility of amendment can, by itself, justify the denial of . . . leave to amend.'") (quoting *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995)); *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) ("[W]here the plaintiff has previously been granted leave to amend and has subsequently failed to add the requisite particularity to its claims, [t]he district court's discretion to deny leave to amend is particularly broad." (internal quotation marks omitted) (second alteration in original)).

## II. Conclusion and Orders

For the reasons discussed, the Court:

1. **DISMISSES** Plaintiff's claims against all Defendants in their official capacities and his claims against Defendants Roberts, Cham, D. Bates, J. Bates, Garikaparthi, Casian, and Silva in their entirety sua sponte for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. Sections 1915(e)(2)(B)(ii) and 1915A(b)(1) and without further leave to amend.

2. **DIRECTS** the Clerk of the Court to serve a copy of this Order on Kathleen Allison, Secretary, California Department of Corrections and Rehabilitation, P.O. Box 942883, Sacramento, California, 94283-0001.

3. **DIRECTS** the Clerk to terminate as parties to this action Defendants Roberts, Cham, D. Bates, J. Bates, Garikaparthi, Casian, and Silva.

4. **DIRECTS** the Clerk to issue a summons as to Plaintiff's First Amended Complaint, Doc. No. 10, upon Defendant Shakiba and forward it to Plaintiff along with a blank U.S. Marshal Form 285.  In addition, the Clerk will provide Plaintiff with a certified

copy of this Order, a certified copy of his First Amended Complaint, and the summons so that he may serve Defendant. Upon receipt of this "IFP Package," Plaintiff must complete the Form 285 as completely and accurately as possible, include an address where Defendant may be served, *see* S.D. Cal. Civ. L.R. 4.1.c, and return it to the United States Marshal according to the instructions the Clerk provides in the letter accompanying his IFP package.

5. **ORDERS** the U.S. Marshal to serve a copy of the Complaint and summons upon Defendant Shakiba as directed by Plaintiff on the USM Form 285 provided to him. All costs of that service will be advanced by the United States. *See* 28 U.S.C. § 1915(d); Fed. R. Civ. P. 4(c)(3).

6. **ORDERS** Defendant Shakiba, once served, to reply to Plaintiff's Complaint within the time provided by the applicable provisions of Federal Rule of Civil Procedure 12(a). *See* 42 U.S.C. § 1997e(g)(2) (while a defendant may occasionally be permitted to "waive the right to reply to any action brought by a prisoner confined in any jail, prison, or other correctional facility under section 1983," once the Court has conducted its sua sponte screening pursuant to 28 U.S.C. Sections 1915(e)(2) and 1915A(b), and thus, has made a preliminary determination based on the face on the pleading alone that Plaintiff has a "reasonable opportunity to prevail on the merits," defendant is required to respond).

7. **ORDERS** Plaintiff, after service has been effected by the U.S. Marshal, to serve upon Defendant Shakiba, or, if appearance has been entered by counsel, upon Defendant's counsel, a copy of every further pleading, motion, or other document submitted for the Court's consideration pursuant to Fed. R. Civ. P. 5(b).

///
///
///
///
///

Plaintiff must include with every original document he seeks to file with the Clerk of the Court a certificate stating the manner in which a true and correct copy of that document has been served on the Defendant or Defendant's counsel, and the date of that service. *See* S.D. Cal. Civ. L.R. 5.2. Any document received by the Court which has not been properly filed with the Clerk, or which fails to include a Certificate of Service upon Defendant, may be disregarded.

**IT IS SO ORDERED.**

Dated: June 29, 2021

_____
Hon. John A. Houston
United States District Judge