UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSIE DORSEY,<br><br>                               Plaintiff,<br><br>v.<br><br>P. SHAKIBA,<br><br>                              Defendant. | Case No.: 20cv0843-JAH-MDD<br><br>REPORT AND RECOMMENDATION GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br><br>[ECF. No. 22] |

Plaintiff Jessie Dorsey is a state prisoner, proceeding pro se and *informa pauperis* ("IFP"). Mr. Dorsey brings a civil rights claim against Defendant Dr. Shakiba based on the doctor's role in medical care that Plaintiff received while incarcerated. Plaintiff claims that Dr. Shakiba was deliberately indifferent to his medical needs, specifically related to a knee injury Plaintiff sustained while playing basketball at the Ronald J. Donovan State Prison ("RJD"). This Report and Recommendation is submitted to United States Districted Judge John A. Houston pursuant to 28 U.S.C. § 636(b)(1) and Local Civil Rule 72.1(c) of the United States District Court for the Southern District of California.

The matter is before the Court on Defendant's motion for summary

judgment, filed August 23, 2022. (ECF No. 22). For the reasons set forth herein, the Court **RECOMMENDS** Defendant's motion be **GRANTED**.

## I.  Procedural History

Plaintiff filed the operative amended complaint on January 20, 2021. (ECF No. 10 [First Am. Compl. ("FAC")]). The Court dismissed Plaintiff's original complaint on October 15, 2020 based on insufficient filing fees, Plaintiff's failure to specifically allege conduct by several named defendants, and Plaintiff's initial failure to articulate deliberate indifference to his serious medical needs. (ECF No. 7 at 8). The Court permitted Plaintiff to amend his complaint, which he did in 2021, claiming that eight defendants who were employed at the prison violated his civil rights as a result of their intentional medical indifference toward his knee injury. (*Id.*).

In conjunction with its pre-screening review of the 2021 amended complaint pursuant to 28 U.S.C. § 1915(e)(2) and 1915A(b), the Court dismissed Plaintiff's claims against all defendants named in their official capacities but considered Plaintiff's substantive claim as alleged against all defendants in their individual capacities pursuant to 42 U.S.C. § 1983. (ECF No. 11 at 5). After its substantive pre-screening review, the Court dismissed Plaintiff's claims against all defendants, except the deliberate indifference claim against the one remaining Defendant, Dr. Shakiba. (*Id.* at 6-7).

The Court permitted Plaintiff's Eighth Amendment claim against Dr. Shakiba to proceed because Plaintiff sufficiently alleged the doctor intentionally delayed medical care and that Plaintiff developed complications as a result of that decision. (*Id.*). Based on the low threshold set for a sua sponte screening review, the Court found that Plaintiff's FAC contained a plausible claim that Dr. Shakiba was deliberately indifferent to Plaintiff's serious medical needs. (*Id.* at 6).

Defendant now contends that summary judgment is appropriate because there is no genuine dispute of material fact to support Plaintiff's Eighth Amendment claim of medical deliberate indifference, and even if there were, Defendant is entitled to qualified immunity. (ECF No. 22 at 6). Defendant also argues any damages in this case are speculative, and Plaintiff cannot establish causation as to this Defendant. (*Id.* at 17-18). The Court issued a notice of rights to Plaintiff pursuant to *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998) (en banc) and *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988) and issued a briefing schedule that set Plaintiff's response deadline as September 23, 2022. (ECF No. 23). Plaintiff did not respond to the motion for summary judgment.

## II. Statement of Facts[1]

Plaintiff injured his knee playing basketball while incarcerated in November 2011. (ECF No. 22-3 [Def.'s Statement of Undisputed Facts ("DUF") ¶ 4]). Plaintiff received treatment from many providers from 2012 to 2019, the time period alleged in his amended complaint. (FAC at 2; ECF No. 22-3 [DUF ¶ 7]). The first doctors who treated Plaintiff focused on conservative measures, such as steroid injections, but those efforts provided only temporary relief. (*Id.* at 3). Plaintiff contends those measures were "seemingly based on witchcraft medincintry [sic] and financial conservation." (*Id.*).

---

[1] These facts are undisputed because Plaintiff has not filed an opposition or put forth any evidence disputing them. Defendant's Undisputed Facts are based on (1) Plaintiff's deposition testimony (ECF No. 22-1), (2) Dr. Shakiba's Declaration (ECF No. 22-2) and attached medical records. To the extent possible, Plaintiff's allegations of fact are also taken from the FAC, which are not to be construed as findings of fact by the Court.

Plaintiff underwent a surgical procedure on his knee in 2013, which did not alleviate his pain. (*Id.*). Dr. Shakiba only treated Plaintiff once in 2015 before becoming his primary care physician on September 30, 2019. (ECF No. 22-2 ¶ 5). That initial visit occurred on November 4, 2015 when Dr. Shakiba was assigned to all scheduled appointments in the C Yard where Plaintiff was located. (*Id.* ¶ 8). As part of that one-time visit, Dr. Shakiba reviewed with Plaintiff the results of an MRI Plaintiff had on October 21, 2015. (*Id.*).

Defendant's medical notes indicate that, during that appointment, Dr. Shakiba explained that Plaintiff had a complex lateral tear and mild-to-moderate osteoarthritis in the patellofemoral compartment. (*Id.*). Dr. Shakiba made a Request for Services ("RSF") the same day so that Plaintiff could receive an orthopedic consultation to determine whether he was a surgical candidate for a meniscus repair. (*Id.*). Dr. Shakiba did not see Plaintiff again until September 2019. (ECF No. 22-2 [Shakiba Decl. ¶ 5]).

On January 5, 2016, Plaintiff had an orthopedic consultation with former defendant Dr. Cham, who recommended follow-up care and a repeat arthroscopy on Plaintiff's right knee. (ECF No. 22-3 [DUF ¶¶ 9-10]). Between March 25, 2016 and May 8, 2019, Plaintiff received treatment for his knee condition from six other medical providers, all of whom were dismissed as defendants in this case. (*Id.* ¶ 11). On May 8, 2018, Dr. Cham recommended a total knee arthroplasty of the right knee, which Plaintiff initially refused. (*Id.* ¶ 12).

That knee surgery took place a year later, on May 8, 2019, when former defendant Dr. Bates performed the arthroscopy of the right knee and a partial medial and lateral meniscectomy; Dr. Bates met with Plaintiff for a surgical follow-up visit on June 3, 2019. (*Id.* ¶¶ 12-13). Physical therapy and

follow-up care were prescribed, but a knee replacement surgery was not recommended. (*Id.* ¶¶ 12-14). During his medical treatment from 2012 to the present, Plaintiff received the following mobility devices: a cane, mobility walker, knee braces for both knees, and lower bunk accommodation. (*Id.* ¶ 15).

Once Dr. Shakiba became Plaintiff's primary care physician in September 2019, he saw Plaintiff for additional follow-up care three times during the course of three months. (ECF No. 22-2 [Shakiba Decl. ¶ 7]). In September, Dr. Shakiba discussed with Plaintiff the importance of weight loss to reduce his pain; he also prescribed Celebrex and advised Plaintiff to complete his six remaining physical therapy sessions. (ECF No. 22-2 [Shakiba Decl. ¶ 7]). Plaintiff saw Dr. Shakiba again on October 24, 2019, and they discussed Plaintiff's treatment plan. (*Id.* ¶ 8). Plaintiff stated that another doctor also recommended that Plaintiff complete the authorized physical therapy and then request another surgical consultation. (*Id.*). Dr. Shakiba approved a new knee brace for Plaintiff on November 8, 2019. That is the last appointment relevant to the claim alleged here, which concerns Plaintiff's medical care from 2012 to 2019. (*Id.* ¶ 9). Dr. Shakiba did not cancel any appointments related to Plaintiff's right knee problems. (ECF No. 22-2 [Shakiba Decl. ¶ 5]).

### III.   Legal Standards

#### A. Summary Judgment

Summary judgment is proper when the pleadings and materials demonstrate "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine dispute as to a material fact is a question a trier of fact must answer to determine the rights

of the parties under the applicable substantive law. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (stating that a material fact is one that is relevant to an element of a claim or defense and whose existence might affect the outcome of the suit); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. The court must review the record as a whole and draw all reasonable inferences in favor of the non-moving party. *Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir.2003). Unsupported conjecture or conclusory statements are insufficient to defeat summary judgment. *Id.; Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097, 1103 (9th Cir. 2008).

      The moving party has the initial burden of demonstrating that summary judgment is proper. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970). The burden then shifts to the opposing party to provide admissible evidence beyond the pleadings to show that summary judgment is not appropriate. *See Celotex*, 477 U.S. at 322, 324. To avoid summary judgment, the opposing party cannot rest solely on conclusory allegations of fact or law. *See Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir.1986). Instead, the non-movant must designate which specific facts show that there is a genuine issue for trial. *See Anderson*, 477 U.S. at 256.

      A district court may not grant a motion for summary judgment solely because the opposing party has failed to file an opposition. *Cristobal v. Siegel*, 26 F.3d 1488, 1494-95 & n. 4 (9th Cir. 1994). A court may, nonetheless, "grant an unopposed motion for summary judgment if the movant's papers are themselves sufficient to support the motion and do not on their face reveal a genuine issue of material fact[.]" *Williams v. Santa Cruz Cnty. Sheriff's Dep't,* 234 F. App'x 522, 523 (9th Cir. 2007) (citing *Henry*

*v. Gill Indus., Inc.*, 983 F.2d 943, 950 (9th Cir. 1993)).

### B. Medical Indifference

The Eighth Amendment requires that inmates have "ready access to adequate medical care," *Hoptowit v. Ray*, 682 F.2d 1237, 1253 (9th Cir. 1982), and "deliberate indifference to serious medical needs of prisoners" violates the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). An inmate establishes an Eighth Amendment violation by proving that prison officials were "deliberate[ly] indifferen[t] to serious medical needs," meaning that they "intentionally den[ied] or delay[ed] access to medical care or intentionally interfer[ed] with the treatment once prescribed." *Id.* at 106.

"Deliberate indifference 'may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown in the way in which prison physicians provide medical care.'" *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (quoting *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988)). "A prison official acts with 'deliberate indifference . . . only if the [prison official] knows of and disregards an excessive risk to inmate health and safety.'" *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (citation omitted).

"Deliberate indifference is a high legal standard." *Id.*; *see also Edmo v. Corizon, Inc.*, 949 F.3d 489, 494 (9th Cir. 2020). "Under this standard, the prison official must not only 'be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). In other words, the official must have "subjective knowledge" of the medical risk. *Harrington v. Scribner*, 785 F.3d 1299, 1304 (9th Cir. 2015). It "requires more than ordinary lack of due care." *Farmer*, 511 U.S. at 835 (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)) (internal

quotation mark omitted). "Inadvertent failures to provide adequate medical care, mere negligence or medical malpractice, delays in providing care (without more), and differences of opinion over what medical treatment or course of care is proper, are all insufficient to constitute an Eighth Amendment violation." *Norvell v. Roberts*, No. 20-cv-0512 JLS (NLS), 2020 WL 4464454, at *4 (S.D. Cal. Aug. 4, 2020) (citing *Estelle*, 429 U.S. at 105-07).

A claim of deliberate indifference has two distinct elements: (1) a "serious medical need" and (2) the "deliberate indifference" of prison officials. *Id.* "A serious medical need requires an ailment of a greater magnitude or with a cause separate from confinement." *Doty v. Cty. of Lassen*, 37 F.3d 540, 546 (9th Cir. 1994) internal quotation marks omitted). A serious medical need exists "if the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Id.* (internal quotation marks omitted). Indications that a plaintiff has a serious medical need include "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992), overruled in part on other grounds by *WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc).

"A plaintiff cannot prevail on a Section 1983 claim where the dispute is over the quality of medical treatment. *Sanchez v. Veld*, 891 F.2d 240, 242 (9th Cir. 1989); *see also Edmo*, 949 F.3d at 495. Where a plaintiff's claims arise from a course of treatment he actually received, the plaintiff must prove that the course of treatment was medically unacceptable under the

circumstances and that the physician consciously chose that course in disregard of an excessive risk to the plaintiff's health. *Toguchi*, 391 F.3d at 1058. In order to prevail on a claim involving choices between alternative courses of treatment, a plaintiff must show that the course of treatment the doctor chose was medically unacceptable under the circumstances and that he chose this course in conscious disregard of an excessive risk to the plaintiff's health. *Id.*

## IV. Discussion

Plaintiff alleges in the amended complaint that Dr. Shakiba "cancelled follow-up appointments, and refused to see the Plaintiff' to discuss new develop[]ments with his right knee," and "ignored the complaints and pain reduction request submitted by the Plaintiff' as per RJD policy." (ECF No. 10 at 4-5). The district judge permitted Plaintiff's claim to proceed against this Defendant based on those tenable allegations because intentionally delaying medical care that leads to complications states a valid claim. (ECF No. 11 at 6). The Court cautioned Plaintiff that a closer review of his allegations could come in the form of a subsequent dispositive motion. (*Id.*).

To support his allegations against Dr. Shakiba, Plaintiff attached several medical records to his amended complaint, but none of those records are signed by, nor concern, Dr. Shakiba's role in Plaintiff's treatment. (ECF No. 10 at 91-102). Nothing Plaintiff attached to his complaint, and none of the medical evidence in the record suggests that Dr. Shakiba knew of and disregarded an excessive risk to Plaintiff's health or safety, or denied, delayed, or intentionally interfered with Plaintiff's medical treatment in any way.

Instead, Dr. Shakiba was attentive and responsive to Plaintiff, and Defendant scheduled and kept regular follow-up appointments with him after

becoming his primary care provider.  In 2015, Defendant recommended follow-up care to Plaintiff, and Plaintiff received that follow-up treatment in a timely manner.  After becoming Plaintiff's primary care doctor four years later, Dr. Shakiba saw Plaintiff three times in three months, and each time he actively engaged in Plaintiff's care.  He reviewed Plaintiff's physical therapy notes, discussed his treatment plan, prescribed pain management medication and an assistive device, and made two referrals for surgical consultation.  (ECF No. 22-2 [Shakiba Decl. ¶¶ 17-19]).

All evidence before the Court reveals that Defendant was responsive to Plaintiff's injury and pain, not medically indifferent.  Plaintiff's "conclusory assertion to the contrary is insufficient to raise an issue of material fact."  *See Toguchi*, 391 F.3d at 1058 (finding that unsuccessful efforts to resuscitate inmate were not deliberately indifferent).  In Plaintiff's deposition, he stated that he should have had a total knee replacement because he continued to struggle with problems and issues despite the care he received.  (ECF No. 22-3 [DUF ¶ 20]).  Dr. Shakiba, however, was not the doctor empowered to make that decision.  (ECF No. 22-2 [Shakiba Decl. ¶ 11]).  Defendant lacked the authority to authorize or conduct a total knee replacement surgery.  (*Id.*).

Dr. Shakiba could, and did, refer Plaintiff for a surgical consultation for the requested procedure.  But the decision for Plaintiff to undergo a right knee arthroscopy instead of a total knee replacement was made by Dr. Bates on May 8, 2019, four months before Defendant became Plaintiff's primary care physician in September 2019.  (*Id.* ¶ 6).  Contrary to Plaintiff's allegations, the medical records show there was never a denial of Plaintiff's Request for Services concerning his knee injury when Defendant served as Plaintiff's primary care physician.  (ECF No. 22-2 [Shakiba Decl. ¶ 10]).  No evidence supports Plaintiff's conclusory statement that Dr. Shakiba canceled

any appointments related to Plaintiff's knee, and the undisputed evidence is that he did not. (ECF No. 22-2 [Shakiba Decl. ¶ 5]).

"Liability under section 1983 arises only upon a showing of personal participation by the defendant." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (citation omitted). There is simply no evidence the Defendant personally participated in any of the alleged unlawful behavior. Because there is no evidence to support a medical indifference claim, the Court does not reach Defendant's arguments concerning qualified immunity or speculative damages.

## V.   Conclusion

For the foregoing reasons, **IT IS HEREBY RECOMMENDED** that the District Court issue an Order: (1) Approving and Adopting this Report and Recommendation; and (2) GRANTING Defendant's Motion for Summary Judgment.

**IT IS HEREBY ORDERED** that any written objections to this Report must be filed with the Court and served on all parties no later than February 6, 2023. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objection shall be filed with the Court and served on all parties no later than February 21, 2023. The parties are advised that the failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998).

**IT IS SO ORDERED**.

Dated:   January 23, 2023

Hon. Mitchell D. Dembin
United States Magistrate Judge